IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SELECT TIMBER PRODUCTS LLC,
FINISH INNOVATIONS LLC,
BRET MORGAN, MATHEW MORGAN,
AND JASON K. SCARLETT,

    Plaintiffs,

 v.

STEVE F. RESCH, JR., TIMOTHY CONYARD,
AND CEDAR DIRECT MINNESOTA LLC

    Defendants.

No. 3:17-cv-00541-HZ

OPINION & ORDER

//

//

//

Iris Tilley
Tyler J. Volm
Barran Liebman LLP
601 SW Second Avenue, Suite 2300
Portland, OR 97204

    Attorneys for Plaintiffs

David H. Madden
Mersenne Law
9600 SW Oak Street, Suite 500
Tigard, OR 97223

    Attorneys for Defendants

HERNÁNDEZ, District Judge:

    This case arises from Defendants' alleged misappropriation of Plaintiffs' trade secrets. Plaintiffs claim that Defendants violated the federal Defend Trade Secrets Act ("DTSA") and the Oregon Trade Secrets Act ("OTSA") by misappropriating their proprietary process for producing specialized wood products ("Confidential Process") as well as other trade secrets including pricing information, customer lists, and information about customer and employee relationships ("Trade Secret Information"). Plaintiffs also allege, in relevant part, conversion and intentional interference with their economic relationships ("IIER") claims. Defendants Timothy Conyard and Cedar Direct Minnesota LLC ("CDM") move to dismiss the claims identified above. The Court denies Defendants' motion with respect to Plaintiffs' misappropriation and IIER claims. Defendants' motion regarding Plaintiffs' conversion claim is granted because that claim is superseded by OTSA.

## BACKGROUND

    Plaintiff Select Timber Products LLC ("STP") was comprised of four equal member-managers: Plaintiffs Bret Morgan, Mathew Morgan, and Jason Scarlett, as well as Defendant

Steve Resch. Compl. ¶ 15, ECF 1. STP uses its Confidential Process to produce distressed and aged-looking wood products for use in design, construction, and building trades. *Id.* at ¶ 13. Plaintiffs' Confidential Process includes a proprietary wood burning machine that Bret Morgan designed. *Id.* at ¶ 18. The Morgans, who are also member-managers of Plaintiff Finish Innovations LLC, licensed use of the Confidential Process to STP. *Id.* at ¶¶ 10–11. All four STP owners signed a licensing agreement with Finish Innovations. *Id.* The license prohibits STP members from using the Confidential Process outside the scope of the agreement. *Id.* Bret Morgan then instructed STP employees Dwayne Orr and Spencer Hardy to duplicate his wood burning machine for STP. *Id.* Hardy also signed a non-compete and nondisclosure agreement, prohibiting disclosure of the Confidential Process. Compl. Ex. C, at 1. Resch signed Hardy's agreement as a witness. *Id.* at 9.

Plaintiffs allege that Resch began stealing STP's trade secrets—including the Confidential Process—for Conyard and CDM in 2016. Compl. at ¶ 23. CDM is a competitor in the aged-looking wood industry and Conyard is CDM's President. *Id.* at ¶¶ 7–8. Resch asked Orr to construct a wood burning machine for CDM, similar to the machine designed by Morgan. *Id.* at ¶¶ 23–24. Orr shipped the wood burning machine to CDM on January 26, 2017. *Id.* Next, Resch convinced Hardy to visit CDM and demonstrate how to use the machine to recreate Plaintiffs' Confidential Process. *Id.* at ¶ 25. CDM or Conyard paid Hardy $10,000 to fly to Minnesota and teach them the Confidential Process. *Id.* Plaintiffs allege that Conyard and CDM conspired with Resch to misappropriate STP's trade secrets, as well as to interfere with Plaintiffs' economic relationships with current and prospective customers. *Id.* at ¶¶ 28–31. Plaintiffs also allege that CDM is "performing virtually the same wood aging and distressing process by using Plaintiffs' Trade Secret Information." *Id.* at ¶ 42.

Plaintiffs filed a motion for a temporary restraining order ("TRO") concurrently with their Complaint. *See* TRO, ECF 4. The Court granted the TRO, finding that Plaintiffs had satisfied the four *Winters* factors, which include demonstrating "a strong likelihood of success on the merits." *NRDC v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007). Moreover, Plaintiffs have resolved their claims against Resch and only Conyard and CDM remain as defendants in this case. Now, before the Court is Conyard and CDM's motion to dismiss. *See* Mot. to Dismiss, ECF 30.

STANDARDS

A motion to dismiss for failure to state a claim may be granted only where there is no cognizable legal theory to support the claim or where the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Courts must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Courts need not, however, accept conclusory allegations as truthful. *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).

A motion to dismiss under Rule 12(b)(6) will be granted if the plaintiff alleges "grounds" for "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). The complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]"*Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (internal quotation marks and citations omitted).

## ANALYSIS

Defendants move to dismiss Plaintiffs' claims for: misappropriation of trade secrets; IIER, and conversion. With respect to misappropriation, Defendants argue that Plaintiffs have failed to allege any facts showing that Conyard and CMD knew or should have known that the Confidential Process and Trade Secret Information that they received were in fact trade secrets. In other words, Conyard and CDM's position is that they were unaware of and cannot be liable for Resch and other STP employees' misconduct. Regarding Plaintiffs' IIER claim, Defendants argue that Plaintiffs fail to allege any specific contractual relationship or to identify any particular current or prospective customer. Lastly, Defendants argue that Plaintiffs' conversion claim is preempted by OTSA because its allegations are based on the same operative facts as the trade secret misappropriation claims.

### I. Trade Secret Misappropriation

Defendants move to dismiss Plaintiffs' DTSA and OTSA claims, arguing that Plaintiffs allege insufficient facts showing CDM and Conyard's knowledge. As noted above, Plaintiffs have settled their claims against their former partner Resch. Defendants admit that Plaintiffs alleged sufficient facts showing that Resch, Orr, and Hardy knew that the wood burning machine and its operation were trade secrets. According to Defendants, however, Plaintiffs have not alleged that CDM and Conyard had the same knowledge. Specifically, Defendants argue that the

allegations that CDM and Conyard "knew or should have known" that they received trade secrets and "conspired and acted in concert with Defendant Resch" are unsupported by facts. Thus, the remaining question is whether Plaintiffs pled sufficient facts showing that CDM and Conyard had the requisite knowledge to violate federal and Oregon law given their position as receivers of misappropriated trade secrets.

To survive a motion to dismiss a trade secret misappropriation claim, the plaintiff must allege facts that plausibly support the claim that the defendant "acquired the trade secrets by one of the improper means listed [under the statute]." *AccentCare Home Health of Rogue Valley, LLC v. Bliss*, 2017 U.S. Dist. LEXIS 88125 *12 (D. Or. Apr. 13, 2017) (finding that the plaintiff's allegations that the defendants conspired to recruit employees of a competitor and hide recruitment efforts were sufficient to support a claim of trade secret misappropriation). Federal[1] and Oregon law[2] both define trade secret misappropriation as including *knowledge* of the theft or improper use. The DTSA provides that to be liable for the theft of trade secrets, the defendant must have "knowingly" stole or "knowingly" received information that was stolen. 18 U.S.C. § 1832(a)(1). Under the OTSA, liability may be imposed where the defendant "knows or has reason to know that the trade secret was acquired by improper means." O.R.S. § 646.461(2)(a).

Plaintiffs provide sufficient factual allegations of CDM and Conyard's knowledge to support their trade secret misappropriation claims. The following allegations are taken from

---

[1] "Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly-- (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information… (3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization…" 18 U.S.C. § 1832.

[2] "Misappropriation" means: (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; (b) Disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret… or (d) Disclosure or use of a trade secret of another without express or implied consent by a person, who at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was: (A) Derived from or through a person who had utilized improper means to acquire it…" O.R.S. § 646.461.

Plaintiffs' Complaint. STP and CDM are direct competitors in a niche market. Compl. ¶¶ 13, 18. The Confidential Process—in particular Bret Morgan's wood burning machine—gave STP a considerable advantage relative to other producers. *Id.* at ¶ 18.The design and operation of the machine was "a key element of STP's Trade Secret Information." *Id.* Resch and CDM communicated about the machine, and Resch insisted that Orr build one for CDM. *Id.* at ¶¶ 23–24. Conyard, as the agent of CMD, paid Orr to build the machine. *Id.* at ¶ 24. Then, CDM or Conyard paid Hardy $10,000 to fly to Minnesota and teach CDM how to use the machine to duplicate STP's Confidential Process. *Id.* at ¶ 25. CDM and Conyard "knowingly received the Trade Secret Information from Spencer Hardy while he was bound by a nondisclosure agreement[.]" *Id.* at ¶ 40. Additionally, Plaintiffs allege that Defendants conspired with Resch to acquire STP's Trade Secret Information, including its customer lists and other information about STP's relationships with its employees and customers. *Id.* at ¶¶ 31, 37.

When construing these allegations in the light most favorable to Plaintiffs, it is plausible that CDM and Conyard knew or had reason to know that the Confidential Process and Trade Secret Information they received from Resch, Orr, and Hardy were trade secrets. Plaintiffs allegations that CDM and Conyard conspired with Resch, paid Orr to build the wood burning machine, and paid Hardy to teach them how to use it are sufficient to infer that Defendants' knowledge.

## II. IIER

Next, Defendant moves to dismiss Plaintiffs' IIER claim for failure to identify any contract or economic relationship with a particular current or prospective customer. The elements of an IIER claim include:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic

>       advantage), (2) intentional interference with that relationship, (3)
>       by a third party, (4) accomplished through improper means or for
>       an improper purpose, (5) a causal effect between the interference
>       and damage to the economic relationship, and (6) damages.

*Cron v. Zimmer*, 255 Or. App. 114, 125, 296 P.3d 567, 575 (2013) (quoting *McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841, 844 (1995)). IIER applies to current contractual relationships as well as to business relationships and prospects. *See Aylett v. Universal Frozen Foods Co.*, 124 Or. App. 146, 152–53, 861 P.2d 375, 379 (1993) (allowing potato growers to bring an IIER claim against the defendant buyer for interfering with the plaintiffs' prospective economic relationship with another buyer).

Plaintiffs have alleged a plausible IIER claim. With regard to the first element, Plaintiffs identify contractual relationships with "its current customers and prospective contractual relationships with prospective customers." Compl. ¶ 71. Plaintiffs need not provide detailed facts. Facts which support a plausible claim for relief will suffice. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiffs allege that Conyard and CDM are using "virtually the same" wood burning process as the Confidential Process in order to "directly compete with STP" in a niche market. Compl. ¶¶ 13, 18, 42. Plaintiffs also allege that Conyard and CDM are in possession of their Trade Secret Information which includes pricing information, customer lists, and information about their relationships with their customers. *Id.* at ¶¶ 2, 3, 26, 73–74.

Accepting that the facts alleged in the Complaint are true, and construing them in the light most favorable to Plaintiffs, the Court concludes that the IIER claim is sufficiently alleged. STP and CDM are direct competitors. CDM is allegedly in possession of STP's customer list. STP alleges that CDM is using its Confidential Process to produce identical products that it is marketing to STP's customers. The Court is persuaded that these allegations are sufficient for Plaintiff's IIER claim to survive Defendants' motion to dismiss.

**III. Conversion**

Lastly, Defendants move to dismiss Plaintiffs' conversion claim on the ground that it is superseded by OTSA. Plaintiffs did not respond to Defendants motion to dismiss the conversion claim. OTSA supersedes "conflicting, restitution or other law of Oregon providing civil remedies for misappropriation of a trade secret." O.R.S. § 646.473(1). Other civil remedies, however, are not superseded where they "are not based upon misappropriation of a trade secret." ORS § 646.473(2)(b). Defendant argues that Plaintiffs' conversion claim is preempted by their trade secret misappropriation claims because the two share the same operative facts.

> Oregon courts have not interpreted [the] language [of § 646.473(2)(b)] or addressed the extent to which the Act preempts civil remedies. However, a number of courts in other states have extended the preemptive effect of the same language to claims that are based on the same operative facts as a claim for trade secret misappropriation under the Act. Where the essence of the claim relates primarily to the alleged misappropriation of a trade secret, the claim is displaced by the preemptive language of the Act.

*Precision Automation, Inc. v. Tech. Servs., Inc.*, No. 07-CV-707-AS, 2007 WL 4480736, at *2 (D. Or. Dec. 14, 2007) (quoting *Acrymed, Inc. v. Convatec*, 317 F.Supp.2d 1204, 1217 (D. Or. 2004)). Other courts from this District have interpreted OTSA to supersede conversion claims based on the same conduct. *See Kante v. Nike, Inc.*, No. CV 07-1407-HU, 2008 WL 5246090, *4 (D. Or. Dec. 16, 2008) (holding that the plaintiff's conversion claim was superseded because it was based on the defendant's alleged misappropriation of proprietary material); *K.F. Jacobsen & Co. v. Gaylor*, 947 F. Supp. 2d 1120, 1127 (D. Or. 2013) (generally recognizing that conversion claims based on alleged misappropriation of trade secrets are preempted).

In this case, Plaintiffs' conversion claim relates entirely to the alleged misappropriation of trade secrets. Plaintiffs allege that "[w]ithout authorization, Defendants each exercised control over Plaintiffs' Confidential Process and Trade Secret Information, and used such property to

9 – OPINION & ORDER

Plaintiffs' detriment in the establishment and continued operation of CDM." Compl. ¶ 77. Plaintiffs further allege that Defendants' conduct "interfered with Plaintiffs' rights to control the use of its proprietary information and trade secrets." *Id.* at ¶ 78.

In *K.F. Jacobsen*, the court denied the defendant's motion to dismiss the conversion claim, construing the claim to possibly include information that did not qualify as trade secrets. 947 F. Supp. 2d at 1127. Here, by contrast, Plaintiffs' conversion claim is based solely on Defendants' alleged misappropriation of the Confidential Process and Trade Secret Information. In their misappropriation claims, Plaintiffs state that their Confidential Process and Trade Secret Information constitute "trade secrets" under both the DTSA and OTSA. Compl. ¶¶ 33, 52, 54. Thus, the essence of the Conversion Claim relates directly to Plaintiff's misappropriation of trade secrets claims. Accordingly, Plaintiffs' conversion claim is preempted under O.R.S. § 646.473(1).

## CONCLUSION

Defendants' motion to dismiss is DENIED with regard to Plaintiffs' misappropriation of trade secrets claims and IIER claim. The motion is GRANTED with regard to Plaintiffs' conversion claim.

IT IS SO ORDERED.

Dated this 21 day of August, 2017.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge